# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WAKEFIELD KENNEDY, LLC, a Washington limited liability company,<br><br>　　Plaintiff,<br><br>vs.<br><br>D. SHANE BALDWIN, an individual; MARK STAPLES, an individual; SILVERLEAF FINANCIAL 9, LLC, a Utah limited liability company; SILVERLEAF FINANCIAL, LLC, a Utah limited liability company; METRO NATIONAL SETTLEMENT SERVICES, LLC, a Utah limited liability company; and STATE CAPITAL HOLDINGS, LLC, a New York limited liability company,<br><br>　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART WAKEFIELD KENNEDY'S [152] AND METRO NATIONAL'S [187] MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 11-cv-00604-DN-EJF<br><br>Judge David Nuffer<br><br>Magistrate Evelyn J. Furse |
| STATE CAPITAL HOLDINGS, LLC, a New York limited liability company,<br><br>　　Plaintiff,<br><br>vs.<br><br>SILVERLEAF FINANCIAL 9, LLC, METRO NATIONAL SETTLEMENT SERVICES, LLC, D. SHANE BALDWIN, MARK STAPLES, SILVERLEAF FINANCIAL, LLC, and WAKEFIELD KENNEDY, LLC<br><br>　　Defendants. | |

This complicated dispute can be succinctly summarized. The problem arises because of two successive transactions, each of which involved Defendants Metro Settlement Services ("Metro Settlement") and Silverleaf Financial 9, LLC ("SLF9").

SLF9 owned a Note and Mortgage (and other related documents) which it contracted to sell to State Capital Holdings, LLC ("State Capital") in accordance with the terms of a Loan Sale Agreement ("LSA"). Metro Settlement was a party to the LSA, and agreed to act as escrow for the LSA.

After entering the contract to sell the Note and related documents to State Capital, but before the sale had closed, Silverleaf pledged the Note and related documents to Wakefield Kennedy, LLC ("Wakefield"), in order to secure a loan from Wakefield in the principal amount of $1,150,000.00. Pursuant to the terms of a written Custody Agreement, Metro Settlement agreed to take possession of the Note on behalf of and for the benefit of Wakefield, and not to release the Note until the Wakefield-SLF9 loan was paid, in order to perfect Wakefield's security interest in the Note.

At the time of the Wakefield-SLF9 loan, and as reflected by the Custody Agreement, Wakefield, Silverleaf, and Metro Settlement contemplated that proceeds of the SLF9-State Capital Loan Sale would be used to timely pay off the Wakefield-SLF9 loan, such that Metro Settlement could then release the Note and related documents to State Capital. However, instead of ensuring that the Loan Sale proceeds were used to pay off the Wakefield-SLF9 loan, Metro Settlement released the proceeds to SLF9, acting only on instructions from Mark Staples, President of SLF9's parent, Silverleaf Financial, LLC. The Wakefield-SLF9 loan remains unpaid.

This case involves Wakefield's and State Capital's competing claims to the Note and Mortgage, and Wakefield's claims against SLF9, its owner Shane Baldwin, Staples, Silverleaf Financial, and Metro Settlement. This Order resolves cross motions for summary judgment between Wakefield and Metro Settlement on Wakefield's 5th, 6th and 7th causes of action, for breach of contract, negligence, and breach of fiduciary duty.[1]

## UNDISPUTED MATERIAL FACTS

1. Metro Settlement and Metro National Title Company ("Metro Title") were formed in 2008 and 1988, respectively.[2] There is no "Metro National Title Services, LLC."[3]

2. Metro Settlement and Metro Title perform escrow, settlement, and title insurance services for residential and commercial transactions. Metro Title handles transactions for properties and clients in Utah, while Metro Settlement handles transactions for properties and clients in other states.[4] Rodney A. Newman is the Manager of Metro Settlement and the President of Metro Title.[5]

3. On December 28, 2009, State Capital Holdings, LLC ("State Capital") entered a Loan Sale Agreement (the "LSA") to purchase an $8,900,000 Note and related property from SLF9 (the "Pledged Note").[6] The LSA was last amended on May 24, 2010.[7]

---

[1] Plaintiff Wakefield Kennedy's Motion and Memorandum in Support of Motion for Partial Summary Judgment Against Defendant Metro National Settlement Services, LLC, ("Wakefield's Motion for Summary Judgment"), docket no. 152, filed November 16, 2012; [Metro National Settlement Services, LLC's] Motion and Memorandum for Summary Judgment against Plaintiff ("Metro's Motion for Summary Judgment"), docket no. 187, filed March 1, 2013.

[2] Deposition of Rodney Newman ("Newman Dep."), 8:5–12, docket no. 154-4, filed November 16, 2012.

[3] Declaration of Rod Newman ("Newman Decl.") ¶ 6, docket no. 171-1, filed December 17, 2012.

[4] Newman Dep. 8:18–9:15, 9:21–10:9, 10:10–11:5.

[5] Newman Dep. 8:1–4.

[6] State Capital Holdings, LLC's Amended Complaint ("SCH Amended Complaint") ¶ 19, docket No. 127,,filed October 24, 2012; *see also* Answer of Defendants D. Shane Baldwin, Mark Staples, Silverleaf Financial 9, LLC, and

4. The LSA was also signed by a then-Metro Title employee and stated that Metro Title was the "Escrow Holder."[8] However, Metro Settlement was actually the Escrow Holder under the LSA.[9] Metro Title only does escrow work on matters concerning real property in Utah, while Metro Settlement only does escrow work on matters concerning real property outside Utah.[10] The LSA documents concern real property in Ohio.[11]

5. The LSA defined "Escrow Holder" to be "Metro National Title Company, whose address for this transaction is as follows: 345 East Broadway Salt Lake City Utah 84101 Attention: Claudeen Sutherland."[12] Ms. Sutherland was in reality employed by Metro Settlement, not Metro Title, when the LSA was signed in December 2009.[13]

6. The LSA's purchase price for the Pledged Note was "a cash payment of Three Million One Hundred Thousand and 00/100 Dollars (3,100,000.00) plus all net proceeds from the operating account held by the Receiver on the Closing Date."[14] The LSA was amended by State Capital and SLF9 three times after it was originally signed in order to extend the scheduled closing date.[15]

---

Silverleaf Financial, LLC, to State Capital Holdings, LLC's Amended Complaint ¶ 19, docket 134, filed November 7, 2012.

[7] SCH Amended Complaint ¶ 49-51.

[8] Newman Decl. ¶ 8. Counsel for State Capital, Metro and Wakefield agreed when the motions were heard on February 3, 2014 that Metro, and not Metro Title, was the true escrow agent. Counsel for Silverleaf did not attend the hearing.

[9] Newman Decl. ¶ 11.

[10] Newman Decl. ¶ 9.

[11] Loan Sale Agreement, docket no. 154-10, filed Nov. 16, 2012.

[12] Newman Dep. 23:3–6; Deposition of Claudeen Sutherland ("Sutherland Dep.") 56:21–58:9, docket no. 154-1, filed Nov. 16, 2012; Loan Sale Agreement §1.15.

[13] Sutherland Dep. 8:24–9:6.

[14] Loan Sale Agreement § 1.22.

[15] Loan Sale Agreement; SCH Amended Complaint ¶¶ 49–51.

7.      The LSA was scheduled to close on February 1, 2010, but closing was delayed and extended several times until December 31, 2010.[16]

8.      On June 14, 2010, Wakefield loaned SLF9 $1,150,000.00.[17] The loan ("Wakefield-SLF9 Loan") was due and owing on December 31, 2010.[18] To secure repayment of the Loan, SLF9 executed the following documents: a Promissory Note; a Loan Agreement; a Note Pledge Agreement and an Allonge to the Pledged Note; an Assignment of Open End Mortgage and Related Loan Documents (For Security Purposes) (the "Second Mortgage Assignment"); a Collateral Assignment of Loan Sale Agreement, With Power of Attorney; and a Consent Resolution.[19]

9.      On June 15, 2010, SLF9, Wakefield, and Metro Settlement signed a Custody Agreement.[20] Rodney Newman signed the Custody Agreement on behalf of Metro Settlement.[21]

10.     On June 14, 2010, in conjunction with the Custody Agreement, SLF9 executed an Assignment of Open-End Mortgage and Related Loan Documents (For Security Purposes). The Second Mortgage Assignment was recorded January 25, 2011.[22]

11.     Wakefield filed a UCC-1 Financing Statement on June 16, 2010, which it claims establishes its security interest in the Pledged Note.[23]

---

[16] SCH Amended Complaint ¶¶ 23, 51.

[17] Declaration of David Maag in Support of Wakefield Kennedy's Motion and Memorandum in Support of Motion for Summary Judgment Against the Silverleaf Defendants and D. Shane Baldwin ("11/9/12 Maag Decl.") ¶ 7, docket No. 145, filed Nov. 9, 2012; Promissory Note, docket no. 145-9, filed Nov. 9, 2012; Loan Agreement, docket no. 145-10, filed Nov. 9, 2012.

[18] Promissory Note, docket no. 145-9, filed Nov. 9, 2012.

[19] *Id*.; Loan Agreement, docket no. 145-10, filed Nov. 9, 2012; Collateral Assignment of Loan Sale Agreement and Deposits With an Irrevocable Power of Attorney, docket no 153-1, filed Nov. 16, 2012.docket No. 153

[20] Custody Agreement, docket no. 153-3, filed Nov. 16, 2012.

[21]*Id.*; Newman Dep. 17:15–21.

[22] Assignment of Open-End Mortgage and Related Loan Documents (For Security Purposes), docket no. 187-5, filed March 1, 2013.

12. Claudeen Sutherland was employed as an escrow officer for Metro Settlement from February, 2009, through March 29, 2010.[24] In that time period, Ms. Sutherland was the escrow officer with responsibility for the LSA transaction between SLF9 and State Capital.[25]

13. Madison VanTreese was an escrow assistant who worked with Ms. Sutherland.[26]

14. Ms. VanTreese had been hired by Metro Settlement as a receptionist and had no formal training as an escrow officer at the times relevant here, but was trained and licensed as an escrow officer in 2011.[27]

15. Metro Settlement terminated Claudeen Sutherland's employment at the end of March, 2010, more than three months before the Custody Agreement was signed on June 15, 2010.[28]

16. Ms. VanTreese testified, "Silverleaf had a number of files with us that I was very unfamiliar with. I didn't really know – after Claudeen left, I didn't really know what she had going on or how to take care – you know, to organize her files. And when we would get wires in from Silverleaf, they didn't have any reference. So I believe that that was – I didn't know what to tie anything to."[29]

17. On December 31, 2010, Metro Settlement received a wire transfer in the amount of $1,091,125.00 from Iola-Rimberg & Associates.[30]

---

[23] UCC-1 Filing Statement, docket no. 124-7, filed Oct. 24, 2012.

[24] Sutherland Dep. 8:24–9:6.

[25] Newman Dep. 26:4–6; Sutherland Dep. 56:21–58:9.

[26] Sutherland Dep. 12:24–13:11.

[27] Deposition of Madison VanTreese ("VanTreese Dep.") 7:4–18, 10:3–14.

[28] Newman Dep. 26:3–25.

[29] VanTreese Dep. 35:4–12.

[30] VanTreese Dep. 42:25–43:5; 45:1–16; Email Chain Dated Jan. 3, 2011 (Jan. 3, 2011 Email Chain), docket no. 154-6, filed Nov. 16, 2012..

18.     Ms. VanTreese asked Heston Nielson, in-house counsel for Silverleaf Financial, LLC, what to do with the funds.[31] Knowing that Silverleaf had assigned its rights to payment on the LSA to Wakefield,[32] Mr. Nielson asked Ms. VanTreese "Are there any instructions from Wakefield?"[33]

19.     Mr. Nielson instructed Ms. VanTreese to hold the escrowed funds pending further instructions.[34] Nielson then sent the VanTreese email forward to Shane Baldwin and Mark Staples, saying "See below. Let me know."[35] Shane Baldwin, copying Staples, told Nielson "Give her instructions to send it to Silverleaf."[36] Mr. Nielson replied, "I don't think we can do that per Wakefield instructions, however."[37] Mr. Nielson also expressly advised Baldwin and Staples that they should not tell Ms. VanTreese to wire the money to SLF9, at which point they told him: "We will handle from here. You know, you have closed the deal on the other side and you're done at this point."[38]

20.     On January 4, 2011, Mark Staples, president of Silverleaf Financial, LLC, sent Ms. VanTreese an email directing her to wire the funds to SLF9's bank account.[39]

21.     On January 5, 2011, Madison VanTreese wired $1,091,125.00 from Metro Settlement's escrow account to SLF9.[40] Ms. VanTreese neither sought nor received assistance from any person at Metro Settlement.[41]

---

[31] VanTreese Dep. 47:3–20, 48:25–49:2; Email Chain Dated Jan. 4, 2011 (Jan. 4, 2011 Email), docket no. 154-7, filed Nov. 16, 2012.

[32] Deposition of Heston Nielson (Nielson Dep.) 40:22–41:4, 73:24–74:3, docket no. 154-2, filed Nov. 16, 2012.

[33] VanTreese Dep. 50:9–51:16; Jan. 4, 2011 Email Chain.

[34] Nielson Dep. 68:18–69:8; Jan. 3, 2011 Email Chain.

[35] Nielson Dep. 71:17–24; Jan 4. 2011 Email Chain.

[36] Nielson Dep. 72:23–73:4;Jan 4, 2011 Email Chain.

[37] Nielson Dep. 73:5–74:3; Jan. 4, 2011 Email Chain.

[38] Nielson Dep. 82:9–22.

[39] Jan. 4, 2011 Email Chain.

22. Metro Settlement did not advise Wakefield that it had received the Loan Sale Agreement purchase money, or that SLF9 had instructed Metro Settlement to wire the money to SFL9.[42]

23. SLF9 did not pay the Wakefield-SLF9 Loan on December 31, 2010, or thereafter.[43]

24. On May 17, 2011, Wakefield sent a letter "Re: Woodland Mall Loan: Notice of Event of Default," in which Wakefield alleged that there had been an Event of Default by SLF9 that implicated the Custody Agreement.[44]

25. Metro Settlement tendered the Pledged Note to the custody of the Court.[45]

26. By separate order entered today, State Capital's rights as a prior purchaser of the Note are adjudicated as superior to Wakefield's security interest in the Note, such that State Capital is entitled to possession of the Note and related documents.

---

[40] VanTreese Dep. 62:1–63:4.

[41] VanTreese Dep. 47:14–48:24.

[42] VanTreese Dep. 50:9–51:16.

[43] 11/9/12 Maage Decl. ¶ 12(5)(v).

[44] Letter Dated May 17, 2011 from to D. Shane Baldwin from Michael D. Kuntz, docket no. 154-11, filed Nov. 16, 2012.

[45] Newman Dep. 37:15–18.

## CONCLUSIONS OF LAW

### I. Breach of Contract

Wakefield is entitled to summary judgment on its 5th cause of action, for breach of contract against Metro Settlement. The Custody Agreement clearly provides that until the June 2010, $1,150,000 loan from Wakefield to SLF9 was paid in full, Metro Settlement was obligated to "continue to hold" the Pledged Note, which was part of the Woodland Mall Documents, on Wakefield's behalf.[46] Metro Settlement was to maintain possession of the Note "for the benefit of" Wakefield until both the closing of the transaction under the LSA *and* payment of the Wakefield-SLF9 Loan. Because the Court has held that State Capital is entitled to the Note, Metro Settlement cannot fulfill its contractual obligations under the Custody Agreement. This breach of contract is a result of Metro Settlement's undertaking of cumulative obligations, and its failure to apply the funds within its control to satisfy both. Metro Settlement has placed itself in breach and is liable for that breach.

While the Custody Agreement has no express requirement that Metro Settlement pay funds over to Wakefield, Metro Settlement was obligated under the Custody Agreement to hold the Note until the Wakefield-SLF9 Loan was paid. Wakefield did delay reporting a default by Silverleaf on the Wakefield-SLF9 Loan to Metro Settlement, but Wakefield's reporting is not a condition to Metro Settlement's contractual duty to *hold* the Note.

By its conduct, Metro Settlement placed itself in breach of the Custody Agreement and it is liable to Wakefield for all consequential damages resulting from that breach. Wakefield claims that these damages include principal and interest on the Wakefield-SLF9 Loan, and Wakefield's costs and attorneys' fees. The amount of damages shall be determined hereafter.

---

[46] Custody Agreement, [docket no. 153-3](docket no. 153-3).

## II. Negligence and Breach of Fiduciary Duty

Wakefield's 6th and 7th causes of action, for negligence and breach of fiduciary duty, are barred by the economic loss rule (also known as the independent duty rule).[47] The duties imposed on escrows by Utah Code Ann. § 7-22-108 do not apply to any duties Metro Settlement assumed under the Custody Agreement because the Agreement is governed by Washington law. No duties were argued to apply under Washington law, and if such duties did apply, they would apply as implied terms of the agreement, not as independent tort duties.

## III. Provisions of Judgment.

Wakefield is entitled to summary judgment on its 5th cause of action, as set forth above. However, Wakefield is only entitled to one satisfaction of this judgment and the judgment against Silverleaf and Baldwin entered March 7, 2013.[48] Any sum collected from any defendant shall reduce the amount Wakefield may collect against that or any other defendant. Wakefield shall file a report of any sums received on any judgment within 14 days of receipt. When Wakefield has been paid in full, it shall assign to Metro the Wakefield judgment against SLF9 and/or Baldwin.

---

[47] *A Good Time Rental, LLC v. First American Title Agency, Inc.*, 259 P.3d 534, 538, 540 (Colo. Ct. App. 2011) (where commercial parties are involved, "the duty to act with reasonable care arising from [an] undertaking to provide closing services [is] not independent of the parties' contract").

[48] Memorandum Decision and Order Granting Wakefield Kennedy's Motion for Patial Summary Judgment Against Silverleaf Financial 9, LLC and D. Shane Baldwin, docket no. 188, filed March 7, 2013.

## IV. Further Proceedings

Because Wakefield did not move for summary judgment as to damages,[49] Wakefield shall file a motion for determination of damages, so that judgment may be entered, and shall thereafter file a bill of costs and motion to determine attorneys' fees.

Dated March 6, 2014.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[49] Wakefield's Motion for Summary Judgment 3, docket no. 152, filed November 16, 2012.