## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WAKEFIELD KENNEDY LLC, a Washington limited liability company,<br><br>*Plaintiff,*<br><br>vs.<br><br>D. SHANE BALDWIN, an individual; MARK STAPLES, an individual; SILVERLEAF FINANCIAL 9 , LLC, a Utah limited liability company; SILVERLEAF FINANCIAL, LLC, a Utah limited liability company; METRO NATIONAL SETTLEMENT SERVICES, LLC, a Utah limited liability company; and STATE CAPITAL HOLDINGS, LLC, a New York limited liability company,<br><br>*Defendants.* | CIVIL NO. 11-cv-00604-DN-EJF<br><br>**MEMORANDUM DECISION AND ORDER GRANTING WAKEFIELD KENNEDY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS THIRD AND FOURTH CAUSES OF ACTION**<br><br>Judge David Nuffer<br>Magistrate Evelyn J. Furse |
| STATE CAPITAL HOLDINGS, LLC, A New York limited liability company,<br><br>*Plaintiff,*<br><br>vs.<br><br>SILVERLEAF FINANCIAL 9, LLC; METRO NATIONAL SETTLEMENT SERVICES, LLC; D. SHANE BALDWIN; MARK STAPLES; SILVERLEAF FINANCIAL LLC, and<br><br>*Defendants.* | |

Wakefield Kennedy LLC's ("Wakefield") Motion for Partial Summary Judgment[1] seeks to adjudicate its conspiracy to commit conversion and civil theft claim against Defendants D. Shane Baldwin, Mark Staples, Silverleaf Financial, LLC and Silverleaf Financial 9, LLC (Third

---
[1] Docket no. 273, filed February 25, 2014.

Cause of Action), and its tortious interference with contract claim against D. Shane Baldwin and Silverleaf Financial, LLC (Fourth Cause of Action).

Wakefield's Motion for Partial Summary Judgment was properly supported by the Declaration of John R. Nelson and Exhibits thereto.[2] Defendants filed no response or objection to any of the evidence submitted by Wakefield.

## OVERVIEW

Silverleaf Financial 9 ("SLF9") owned a Note and Mortgage (and other related documents) which it contracted to sell to State Capital Holdings, LLC ("State Capital") in accordance with the terms of a Loan Sale Agreement ("LSA"). After SLF9 entered the contract to sell the Note and related documents to State Capital, but before the sale had closed, SLF9 pledged the Note and related documents to Wakefield, in order to secure a loan from Wakefield. One of the documents signed at the time of the Wakefield-SLF9 loan was a Collateral Assignment of Loan Sale Agreement between Wakefield and SLF9. Under the Collateral Assignment, Wakefield was entitled to receive State Capital's purchase payments tendered into escrow under the LSA in repayment of the loan Wakefield made to SLF9.

In late 2010, State Capital wired the remaining balance of the LSA purchase deposits, $1,091,125.00, to Metro Settlement Services, LLC ("Metro Settlement"), who was a party to LSA and had agreed to act as escrow agent for the LSA. Although this money was owed to Wakefield and should have been disbursed to Wakefield, Metro wired the proceeds to SLF9, acting only on instructions from Mark Staples, the President of SLF9's parent, Silverleaf Financial, LLC ("SLF"). Baldwin, Staples, SLF, and SLF9 then disbursed those funds to SLF and other third parties.

---

2 Declaration of John R. Nelson (Nelson Decl.), docket no. 274, filed February 25, 2014.

## UNDISPUTED MATERIAL FACTS

1. On December 28, 2009, State Capital Holdings, LLC ("State Capital") entered a Loan Sale Agreement ("LSA") to purchase an $8,900,000 Note and related property from Silverleaf Financial 9, LLC ("SLF9") (the "Pledged Note").[3]

2. On June 14, 2010, Wakefield loaned SLF9 $1,150,000 (the "Wakefield-SLF9 Loan").[4]

3. The Wakefield-SLF9 Loan was due and owing on December 31, 2010.[5]

4. To secure repayment of the Wakefield Loan, SLF9 executed, among other documents, a Collateral Assignment of Loan Sale Agreement with Power Of Attorney.[6]

5. Under the Collateral Assignment of Loan Sale Agreement, SLF9 assigned and transferred to Wakefield "all of [SLF9's] right, title and interest in and to [the LSA], . . . together with all rights to receive payments under the [LSA] . . ."[7]

6. Shane Baldwin signed the Promissory Note and Loan Agreement for the Wakefield Loan for SLF9.[8]

7. Shane Baldwin signed the Collateral Assignment of Loan Sale Agreement for SLF9.[9]

8. SLF9 did not pay the Wakefield Loan when it became due on December 31, 2010, or thereafter.[10]

---

[3] State Capital Holdings, LLC's Amended Complaint, Docket No. 127, ¶ 19; see also Answer of Defendants D. Shane Baldwin, Mark Staples, Silverleaf Financial 9, LLC, and Silverleaf Financial, LLC To State Capital Holdings, LLC's Amended Complaint, Docket No. 134, ¶ 19.
[4] November 8, 2012 Declaration of David Maag in Support of Wakefield Kennedy's Motion and Memorandum in Support of Motion for Summary Judgment Against the Silverleaf Defendants and D. Shane Baldwin ("11/8/12 Maag Decl."), Docket No. 145, at ¶ 7, Exs. 9 (Promissory Note) and 10 (Loan Agreement).
[5] 11/8/12 Maag Decl., Ex. 9 (Promissory Note).
[6] November 16, 2012 Declaration of David Maag in Support of Wakefield Kennedy's Motion and Memorandum in Support of Motion for Partial Summary Judgment Against Defendant Metro National Settlement Services, LLC ("11/16/12 Maag. Decl."), Docket No. 153, at ¶ 3, Ex. 1 (Collateral Assignment of Loan Sale Agreement, with Power of Attorney).
[7] 11/16/12 Maag Decl., Ex. 1 (Collateral Assignment of Loan Sale Agreement § 2).
[8] 11/8/12 Maag Decl., Ex. 9 (Promissory Note) and Ex. 10 (Loan Agreement); see also Nelson Decl., Ex. 3 (Baldwin Depo., 93:16-19).
[9] 11/16/12 Maag Decl., Ex. 1 (Collateral Assignment of Loan Sale Agreement).
[10] 11/8/12 Maag Decl., ¶ 12(v).

9. On December 31, 2010, State Capital wired $1,091,125 to Metro Settlement as payment toward the LSA purchase price, to be held in escrow by Metro Settlement.[11]

10. Metro Settlement employee Madison VanTreese received State Capital's wire on behalf of Metro Settlement.[12] VanTreese asked Heston Nielson, in-house counsel for Silverleaf,[13] what to do with the funds.[14] Knowing that Silverleaf had assigned its rights to payment on the LSA to Wakefield,[15] Nielson asked VanTreese "Are there any escrow instructions from Wakefield?"[16]

11. When he received no answer, Nielson instructed VanTreese to hold the escrowed funds pending further instructions.[17] Nielson then sent the VanTreese email forward to Baldwin and Staples, saying "See below. Let me know."[18] Baldwin, copying Staples, told Nielson "Give her instructions to send it to SLF9."[19] Mr. Nielson replied, "I don't think we can do that per Wakefield instructions however," because he understood that Silverleaf had assigned all of its rights and interest in the LSA and the loan sale proceeds to Wakefield.[20] Nielson believes he advised Baldwin of that fact.[21] Nielson also expressly advised Baldwin and Staples that they should *not* tell VanTreese to wire the money to SLF9, at which point they told him: "We will handle from here. You know, you have closed the deal on the other side and you're done at this point."[22]

---

[11] Nelson Decl., Ex. 1 (1/3/11 Email from VanTreese to Nielson).
[12] Nelson Decl., Ex. 2 (VanTreese Depo., 42:25-43:5; 45:1-16); Ex. 1 (1/3/11 Email From VanTreese to Nielson).
[13] Nelson Decl., Ex. 3 (Baldwin Depo., 24:25-25:8).
[14] Nelson Decl., Ex. 2 (VanTreese Depo., 47:3-21; 48:25-49:2; 50:9-51:16); Ex. 4 (1/4/11 Email From VanTreese to Nielson).
[15] Nelson Decl., Ex. 5 (Nielson Depo., 40:21-41:4 [admitting awareness of assignment provisions]; 73:24-74:3 [Q: You understood that Silverleaf had assigned all of its rights and interest in the loan sale agreement and its rights and interests in the proceeds to Wakefield? A: Yes."]).
[16] Nelson Decl., Ex. 4 (1/4/11 Email From Nielson to VanTreese).
[17] Nelson Decl., Ex. 5 (Nielson Depo., 68:18-69:8); Ex. 1 (1/3/11 Email From Neilson to VanTreese).
[18] Nelson Decl., Ex. 5 (Neilson Depo., 71:17-24); Ex. 6 (1/4/11 Email From Nielson to Baldwin and Staples).
[19] Nelson Decl., Ex. 5 (Nielson Depo., 72:23-73:4); Ex. 6 (1/4/11 Email From Baldwin to Nielson and Staples).
[20] Nelson Decl., Ex. 5 (Nielson Depo., 73:5-74:3); Ex. 6 (1/4/11 Email From Nielson to Baldwin).
[21] Nelson Decl., Ex. 5 (Neilson Depo., 74:4-14).
[22] Nelson Decl., Ex. 5 (Nielson Depo., 82:9-22); see also Ex. 3 (Baldwin Depo., 40:14-20).

12. Baldwin then directed SLF's President Staples to instruct Metro Settlement to wire the LSA purchase proceeds into SLF9's bank account.[23]

13. On January 4, 2011, Staples sent VanTreese an email directing her to wire the LSA purchase proceeds to SLF9's bank account.[24] That email was copied to Baldwin.[25]

14. On January 5, 2011, VanTreese wired $1,091,025 from Metro Settlement's escrow account to SLF9's bank account.[26]

15. Defendant Baldwin is the sole member and manager of Silverleaf Ventures, LLC.[27]

16. Silverleaf Ventures, LLC is the manager of Defendant Silverleaf Financial, LLC ("SLF"). Defendant SLF is the manager of Defendant SLF9.[28]

17. Defendant SLF owns 100 percent of the membership interest in Defendant SLF9 and is the only member of SLF9.[29]

18. Defendant Staples was the President of Defendant SLF in December 2010 and January 2011.[30]

19. Although Staples was familiar with the terms of the LSA,[31] and was aware that Wakefield had an interest in the Pledged Note,[32] Staples instructed Metro Settlement to wire the LSA purchase proceeds into SLF9's bank account without making any inquiry into the

---

23 Nelson Decl., Ex. 3 (Baldwin Depo., 41:7-16; 45:22-46:9); see also Ex. 7 (Staples Depo., 124:3-8).
24 Nelson Decl., Ex. 8 (1/4/11 Email From Staples to VanTreese).
25 Nelson Decl., Ex. 8 (1/4/11 Email From Staples to VanTreese).
26 Nelson Decl., Ex. 2 (VanTreese Depo., 62:1-63:4); Ex. 3 (Baldwin Depo., 96:13-19); Ex. 7 (Staples Depo., 124:21-25).
27 Wakefield Kennedy's Amended Complaint ("Wakefield Amended Complaint"), Docket No. 124, ¶ 12; see also Answer of Defendants D. Shane Baldwin, Mark Staples, Silverleaf Financial 9, LLC, Silverleaf Financial LLC To Plaintiff Wakefield Kennedy's Amended Complaint ("SLF Answer"), Docket No. 137, ¶ 12.
28 Wakefield Amended Complaint, ¶ 13; see also SLF Answer, ¶ 13.
29 Nelson Decl., Ex. 3 (Baldwin Depo., 173:12-14).
30 Nelson Decl., Ex. 7 (Staples Depo., 8:24-9:2; 11:3-9; 11:24-12:5).
31 Nelson Decl., Ex. 7 (Staples Depo., 31:21-25).
32 Nelson Decl., Ex. 7 (Staples Depo., 32:13-33:18; 34:18-20).

documents relating to the Wakefield Loan, including but not limited to the Collateral Assignment of Loan Sale Agreement. [33]

20.     Although Staples had Wakefield's contact information and had communicated with Wakefield on a number of previous occasions, Staples instructed Metro Settlement to wire the LSA purchase proceeds into SLF9's bank account without making any inquiry of Wakefield.[34]

## CONCLUSIONS OF LAW

### I. Conspiracy to Commit Conversion and Civil Theft Against Baldwin, Staples, SLF, and SLF9 (Third Cause of Action).

Conversion is an act of willful interference with a chattel, done without lawful justification, by which the person entitled thereto is deprived of its use and possession. *Soundvision Techs., LLC v. Templeton Group Ltd.,* 929 F. Supp. 2d 1174, 1197 (D. Utah 2013). Conversion requires only an intent to exercise dominion or control over goods, not conscious wrongdoing. *Phillips v. Utah State Credit Union,* 811 P.2d 174, 179 (Utah 1991). Money may be the subject of conversion if misappropriated funds have been placed into the custody of another for a definite application, and the party charged wrongfully received the funds. *State v. Twitchell,* 832 P.2d 866, 870 (Utah App. 1992). The measure of damages for conversion is the full value of the property. *Phillips*, 811 P.2d at 179.

Wakefield was entitled to possession of State Capital's payments made under the LSA pursuant to the Collateral Assignment of Loan Sale Agreement. Under the express terms of the Collateral Assignment of Loan Sale Agreement, SLF9 assigned and transferred to Wakefield "all of [SLF9's] right, title and interest in and to [the LSA], . . . *together with all rights to receive*

---

33 Nelson Decl., Ex. 7 (Staples Depo., 24:22-25:7; 26:25-27:17).
34 Nelson Decl., Ex. 7 (Staples Depo., 33:19-34:17).

*payments under the [LSA] . . . .*[35] By directing Metro Settlement to wire the State Capital purchase funds to SLF9, and then disbursing the funds, Baldwin, Staples, SLF, and SLF9 willfully and wrongfully interfered with Wakefield's right to the use and possession of the LSA purchase proceeds. Consequently, Baldwin, Staples, SLF, and SLF9 are jointly and severally liable to Wakefield on its Third Cause of Action, for Conspiracy to Commit Conversion and Civil Theft in the amount of $1,091,125.

## II. Claim for Tortious Interference with Contract Against Baldwin and SLF (Fourth Cause of Action)

To prevail on a claim for intentional interference with economic relations, "the plaintiff must prove that (1) the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Mumford v. ITT Commercial Fin. Corp.,* 858 P.2d 1041, 1043-44 (Utah 1993) (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982)).

With respect to the first element, the interference is intentional "even if the defendant does not act for the purpose of interfering or does not desire it but knows that the interference is substantially certain to occur as a result of defendant's action and is a necessary consequence thereof." *Mumford,* 657 P.2d at 304 (citing Restatement (Second) of Torts, § 766A cmt. e and § 766B cmt. d; *accord Straube v. Larson,* 600 P.2d 371, 374 (Or. 1979)).

"With respect to the second element, only one alternative, either improper purpose or improper means, need be established; a plaintiff need not prove both." *Anderson Dev. Co. v. Tobias,* 116 P.3d 323, 331 (Utah 2005). To establish improper means, a plaintiff must show "that the defendant's means of interference were contrary to statutory, regulatory, or common

---

35 11/16/12 Maag Decl., Ex. 1 (Collateral Assignment of Loan Sale Agreement at § 2).

law or violated an established standard of a trade or profession." *Id.* Improper means include conversion. *See Mumford*, 657 P.2d at 1045.

Here, the undisputed facts prove that Baldwin and SLF knew that Wakefield was entitled to the State Capital LSA purchase money under the terms of the Wakefield-SLF9 Collateral Assignment. Baldwin and SLF intentionally interfered with that contractual expectancy by wrongfully directing Staples to have the purchase money wired to SLF9, and then disbursing the funds to SLF and others. That conduct injured Wakefield in the amount of $1,091,125.

**ORDER**

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Wakefield Kennedy's Motion for Summary Judgment on its Third and Fourth Causes of Action[36] is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter Judgment of the Court in favor of Wakefield Kennedy against Defendants D. Shane Baldwin, Mark Staples, Silverleaf Financial 9, LLC, and Silverleaf Financial, LLC, jointly and severally, in the amount of $1,091,125.00, together with taxable costs, pursuant to Fed. R. Civ. P. 58.

DATED this 25th day of April, 2014.

BY THE COURT:

David Nuffer
United States District Judge

---

[36] Docket no. 273, filed February 25, 2014.